UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETTA KEELER,<br><br>                Plaintiff,<br><br>  v.<br><br>CITY OF SAN DIEGO,<br><br>                Defendant. | Case No. 13-cv-3144-W(BGS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND [DOC. 3]** |

      On December 23, 2013, Plaintiff Etta Keeler commenced this action against Defendant City of San Diego, asserting that Defendant violated the Takings Clause of the Fifth Amendment of the U.S. Constitution by allegedly taking a protected property interest in a judgment lien. Defendant now moves to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes.

      The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1). For the following reasons, the Court **GRANTS WITH LEAVE TO AMEND** Defendant's motion to dismiss.

//

## I. BACKGROUND

Plaintiff worked as an Executive Director at the Girls' Club in Logan Heights. (Compl. ¶ 8.) During her employment at the Girls' Club, Plaintiff would "routinely make large cash loans to the Girls' Club and then await repayment when the grants [from the Department of Education] arrived later in the year." (Id. ¶ 9.) However, during her final year of employment, Plaintiff "found herself unable to front the money needed," and decided to "mortgage[] her personal residence" to ensure that the Girls' Club would receive adequate funding. (Id.)

Following a change in the Girls' Club leadership in 2007, Plaintiff was fired. (Compl. ¶ 10.) She also alleges that "[h]er loans were never repaid, she was denied her severance package, and she never received a dime of her retirement." (Id.) A bank also initiated foreclosure proceedings against Plaintiff's home for the unpaid mortgage used to provide funds to the Girls' Club. (Id.) Consequently, Plaintiff commenced a lawsuit against the Girls' Club in the Superior Court, and on February 22, 2010, that court rendered a judgment in favor of Plaintiff for $171,480.37. (Id. ¶ 11.) Thereafter, Plaintiff filed her abstract of judgment and obtained a "valid lien" against the Girls' Club's building ("Club Building"). (Id.) Plaintiff "soon learned that after she had in fact filed and recorded her lien, the City had acquired the Club Building without satisfying the lien." (Id.) She alleges that "[d]espite repeated claims and attempts at communication[,] the City is still refusing to honor her lien." (Id.)

Defendant "acquired the Club Building by operation of the original long-term ground lease agreement" entered into in 1958 between the Girls' Club and Defendant. (Compl. ¶ 12.) The lease was for the "then-undeveloped lot at 606 South 30th Street, upon which the Girls' Club independently raised the money for, and built the Club Building." (Id.) According to Plaintiff, under paragraphs 4 and 5 of the lease, "the Girls' Club was the owner of the improvements, including the Club Building, up to and until termination of the Lease." (Id.) "Following termination of the lease, the Girls'

Club 'surrender[ed] to City the premises with improvements,' which the 'City may remove, sell, or destroy.'" (Id.)

There is disputed information regarding when the lease was terminated and when the possessory rights to the Club Building transferred to Defendant. Plaintiff alleges that following litigation surrounding the acquisition of the Girls' Club facility, a valid writ of possession was issued on April 14, 2010, and shortly thereafter, the San Diego Sheriff's Department completed a lock out of the property and "turned possession of the Property over [sic] representatives of the City's Parks and Recreation Departement on April 20, 2010." (Compl. ¶ 13.) In its motion, Defendant states that it served the Girls' Club with a 30-day notice of termination on October 7, 2009, contending that the Club Building became Defendant's property upon the termination of the lease on November 17, 2009, and that Defendant having had obtained a writ to gain possession of the property is irrelevant. (Def.'s Mot. 2:19–28.)

As of the date when Plaintiff filed her complaint, she maintains that the judgment lien on the property has not been satisfied. (Compl. ¶ 14.)

On December 23, 2013, Plaintiff commenced this action against Defendant. She asserts a single claim against Defendant for violation of the Takings Clause of the Fifth Amendment of the U.S. Constitution, and contends that she is entitled to "just compensation" as a result of the alleged "unlawful taking" of her judgment lien. Defendant now moves to dismiss the complaint. Plaintiff opposes.

## II.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact as true and construe them in light most favorable to the nonmoving party. Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters of U.S., 497 F.3d 972, 975 (9th Cir. 2007). Material

allegations, even if doubtful in fact, are assumed to be true. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks omitted). In fact, the court does not need to accept any legal conclusions as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered. Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on other grounds). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. Id. It may also consider

material properly subject to judicial notice without converting the motion into one for summary judgment. <u>Barron v. Reich</u>, 13 F.3d 1370, 1377 (9th Cir. 1994).

### III. DISCUSSION

Under the Takings Clause of the Fifth Amendment, the government may not take "property . . . for public use, without just compensation." U.S. Const. amend. V; <u>Daniel v. Cnty. of Santa Barbara</u>, 288 F.3d 375, 380 (9th Cir. 2002). The Takings Clause is applied to the states through the Fourteenth Amendment. <u>Daniel</u>, 288 F.3d at 380. It "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." <u>First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles</u>, 482 U.S. 304, 314 (1987). The Takings Clause "is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." <u>Id.</u> at 315 (emphasis in original). The Supreme Court has emphasized the clause's role in "bar[ring] Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." <u>Armstrong v. United States</u>, 364 U.S. 40, 49 (1960).

#### A. Judgment Lien as a Property Interest Protected by the Takings Clause of the Fifth Amendment

Property interests are not created or defined by the Constitution. <u>Ruckelshaus v. Monsanto Co.</u>, 467 U.S. 986, 1001 (1984). "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." <u>Bd. of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577 (1972); see also <u>Richmond Elks Hall Ass'n v. Richmond Redevelopment Agency</u>, 561 F.2d 1327, 1331 (9th Cir. 1977) ("In determining what property rights exist and therefore are subject to taking under the

1  Fifth Amendment, federal courts look to local state law."). "Consequently, state law
2  determining when a right vests such that a property interest is recognized is crucial to
3  ascertaining . . . whether there has been a taking of property without just
4  compensation." Sw. Diversified, Inc. v. City of Bisbane, 652 F. Supp. 788, 796 (N.D.
5  Cal. 1986). "But a mere unilateral expectation or an abstract need is not a property
6  interest entitled to protection." Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449
7  U.S. 155, 161 (1980).

8       The parties take diametrically opposite positions regarding whether judgment
9  liens are within the scope of the Takings Clause. On one side, Defendant takes the
10 position that a judgment lien is not a property interest protected by the Fifth
11 Amendment. (Def.'s Mot. 3:25–5:11.) And on the other, Plaintiff takes the position
12 that both state and federal courts "recognize *all* types of liens as protected interests that
13 trigger Fifth Amendment protection." (Pl.'s Opp'n 2:22–3:5 (emphasis in original).)
14 Neither party is entirely correct.

15      The term "property" "denote[s] the group of rights inhering in the citizen's
16 relation to the physical thing, as the right to possess, use and dispose of it." United
17 States v. Gen. Motors Corp., 323 U.S. 373, 377-78 (1945). The Supreme Court has
18 recognized certain "intangible interests" to be property for the purposes of the Fifth
19 Amendment's Takings Clause. See Ruckelshaus, 467 U.S. at 1002-03; see also San
20 Diego Metro. Transit Dev. Bd. v. Handley Hotel, Inc., 73 Cal. App. 4th 517, 532
21 (1999). It has also long been implicitly recognized that intangible property rights
22 protected by state law deserve the protection of the Takings Clause. Id. Recognized
23 intangible property interests protected by the Takings Clause include, for example,
24 trade secrets, materialman's liens provided under state law, real-estate liens, and valid
25 contracts. Id. (citing Armstrong, 364 U.S. at 44 (materialman's lien); Louisville Joint
26 Stock Land Bank v. Radford, 295 U.S. 555, 596-602 (1935 (real-estate lien); Lynch v.
27 United States, 292 U.S. 571, 579 (1934) (valid contracts)).
28 //

In <u>In re Ashe</u>, 712 F.2d 864, 869 (3d Cir. 1983), the Third Circuit concluded that "[n]onspecific judicial liens have not been regarded as property interests subject to a taking analysis." In reaching that conclusion, the court reviewed two relevant Supreme Court cases: <u>Conrad v. Atlantic Insurance Company</u>, 26 U.S. (1 Pet.) 386 (1828), and <u>Louisville Joint Stock Land Bank v. Radford</u>, 295 U.S. 555 (1935). In <u>Conrad</u>, "in reviewing the effect of nonspecific judgment liens in Pennsylvania, the Court concluded that a judgment lien did not create a property right in land, but only the opportunity to make a levy." <u>Ashe</u>, 712 F.2d at 869 (citing <u>Conrad</u>, 26 U.S. (1 Pet.) at 442). The Third Circuit continued, explaining that the "interests held to be protected from an unconstitutional taking in [<u>Radford</u>] were not general liens, but mortgages on specific property," which "created vested rights in specific property." <u>Id.</u> (citing <u>Radford</u>, 295 U.S. at 555). Thus, it appears that federal law does not categorically exclude judgment liens from the Fifth Amendment takings analysis. See <u>Ashe</u>, 712 F.2d at 869.

Neither party provides their analysis through the lens of specific-versus-nonspecific judgment liens as the Third Circuit did in <u>Ashe</u>. Plaintiff cites four cases—<u>Armstrong</u>, <u>Radford</u>, <u>Thibido v. United States</u>, 134 F. Supp. 88 (S.D. Cal. 1995), and <u>Wilson v. Beville</u>, 47 Cal. 2d 852 (1957)—suggesting that they provide the independent source creating a protected property interest, but none of these cases specifically address judgment liens. Despite Plaintiff's shortcoming, a consequence of the *both* parties' failures to address the nature of the judgment lien is that Defendant, as the moving party, fails to carry its burden to demonstrate the inadequacy of Plaintiff's complaint, specifically, on the ground that her judgment lien is not a property interest subject to the Fifth Amendment takings analysis. This conclusion does not foreclose the possibility that judgment liens, such as Plaintiff's, are indeed outside the scope of the Fifth Amendment takings analysis. It may very well be that there is applicable law, which the Court was unable to find, that states that Plaintiff's judgment lien is the type that does or does not warrant consideration under the Fifth Amendment. But neither

party provides such legal authority in their briefs. Therefore, despite this Court's reservations that Plaintiff's judgment lien is a protected property interest under the Takings Clause, the Court cannot conclude at this time and as a matter of law that Plaintiff's judgment lien is a property interest that definitively is not subject to the Fifth Amendment takings analysis.

### B. Sufficiency of Plaintiff's Claim for Violation of the Takings Clause of the Fifth Amendment

"The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537 (2005). The "clearest sort of taking"—a physical taking—occurs when the government physically takes possession of an interest in property for some public purpose; it involves the government's encroachment upon or occupation of private land for its own proposed use. Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001). "[P]hysical takings require compensation because of the unique burden they impose: A permanent physical invasion, however minimal the economic cost it entails, eviscerates the owner's right to exclude others from entering and using her property—perhaps the most fundamental of all property interests." Lingle, 544 U.S. at 539. Until Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922), "it was generally thought that the Takings Clause reached *only* a 'direct appropriation' of property, or the functional equivalent of a 'practical ouster of [the owner's] possession.'" Lucas v. S. Carolina Coastal Council, 505 U.S. 1003, 1014 (1992) (citations omitted; emphasis added; brackets in original).

Beginning with Pennsylvania Coal, the Supreme Court "recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and that such 'regulatory takings' may be compensable under the Fifth Amendment." Lingle, 544 U.S. at 537. In other words, "[a] regulatory taking occurs when the value or usefulness of private

property is diminished by a regulatory action that does not involve a physical occupation of the property." Levald v. City of Palm Desert, 998 F.2d 680, 684 (9th Cir. 1993). There are two categories of regulatory action generally deemed *per se* takings for Fifth Amendment purposes: (1) "where government requires an owner to suffer permanent physical invasion of her property—however minor—it must provide just compensation"; and (2) "regulations that completely deprive an owner of '*all* economically beneficial us[e]' of her property." Lingle, 544 U.S. at 538 (citing Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419 (1982); Lucas, 505 U.S. at 1019). Outside of the two aforementioned categories, regulatory-takings challenges are governed by the standards set forth in Penn Central Transportation Co. v. New York City, 438 U.S. 104 (1978), which "acknowledged that it had hitherto been 'unable to develop any "set formula"' for evaluating regulatory takings claims, but identified 'several factors that have particular significance.'" Penn Central, 438 U.S. at 124. Where the government regulates the use of property, "compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole." Yee v. City of Escondido, 503 U.S. 519, 522-23 (1992).

There is no indication here that the alleged taking by Defendant is the product of any regulatory action. Defendant does not appear to have affirmatively acted in relation to Plaintiff's takings claim. Rather, the transition of ownership of the Club Building to Defendant occurred by operation of contract. It is Plaintiff's contention that her property interest—the judgment lien—was taken when that change in ownership occurred. Thus, the takings analysis here is not one that should be done under the regulatory-takings framework, but instead, should be done under the physical-takings framework.

"[T]he Supreme Court [has] held that a [property] owner's Fifth Amendment takings claim against a local government is not ripe until the claimant has availed

himself of all the administrative remedies through which the government might reach a final decision regarding the regulations that effect the taking, and any state judicial remedies for determining or awarding just compensation." West Linn Corporate Park L.L.C. v. City of West Linn, 534 F.3d 1091, 1099 (9th Cir. 2008) (citing Williamson Cnty. Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186 (1985)). "The first condition, which has come to be known as 'prong-one ripeness,' requires a claimant to utilize available administrative mechanisms, such as seeking variances from overly-restrictive or confiscatory zoning ordinances, so that a federal court can assess the scope of the regulatory taking." Id. at 1100 (citing Williamson, 473 U.S. at 190-91). The second condition, known as "prong-two ripeness," is based on the principle that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." Williamson, 473 U.S. at 194. Consequently, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the [federal] Just Compensation Clause until it has used the procedure and been denied just compensation." Id. at 195.

Although Williamson arose in the context of an alleged regulatory taking, the Ninth Circuit applies a modified form of the Williamson analysis to physical takings or exactions.[1] West Linn, 534 F.3d at 1100 (citing Daniel, 288 F.3d at 382). In Daniel, the Ninth Circuit explained that, under California law, the question was not whether a property owner need satisfy prong-one ripeness because those considerations are "automatically satisfied at the time of the physical taking" for "[w]here there has been a physical invasion, the taking occurs at once, and nothing the city can do or say after that point will change that fact." Daniel, 288 F.3d at 382. "Rather, the only pertinent inquiry is prong two." West Linn, 534 F.3d at 1100. The Ninth Circuit has emphasized

---

[1] "The term 'physical taking,' or a physical intrusion to benefit the public that the government causes to be placed on private property, generally is synonymous with an 'exaction,' or a condition of development that local government places on a landowner to dedicate a real interest in the development property for public use." West Linn, 534 F.3d at 1100 n.4.

that, "as in regulatory takings case, the property owner must [still] have sought compensation for the alleged taking through available state procedures." <u>Daniel</u>, 288 F.3d at 382.

Defendant argues that though Plaintiff "allege[s] that the Club Building against which she had the judgment lien had been taken by the City, but it is the judgment lien itself that is the property taken, and there is no allegation the City took the judgment lien for public use." (Def.'s Mot. 5:3–11.) The Court agrees.

Plaintiff alleges throughout the complaint that Defendant acquired the Club Building. (Compl. ¶¶ 4, 14, 16–17.) However, assuming that Plaintiff has a protected property interest in her judgment lien, these allegations do not indicate that Defendant engaged in a permanent physical invasion of Plaintiff's judgment lien so as to eviscerate her right to use it. <u>See</u> <u>Lingle</u>, 544 U.S. at 539. In fact, Plaintiff concedes in the complaint that the lien remains valid. (<u>See</u> Compl. ¶ 17 ("After transfer of the building to the City, Ms. Keeler's lien was still valid[.]").) The continued validity of the lien is inconsistent with the idea that Defendant has taken it in manner that offends the Fifth Amendment. In short, there is no allegation that Defendant has taken possession of the judgment lien to the exclusion of Plaintiff's rights to it. It is also worth noting that the injury that Plaintiff alleges is the result of the inability to enforce the judgment lien against the Club Building following the transition of ownership. (<u>See</u> Compl. ¶ 6 ("Even though Ms. Keeler's lien on the Club Building is still valid, acquisition of the Club Building destroyed all of Ms. Keeler's property rights by leaving her without a remedy to enforce the lien.").) But Plaintiff's judgment against the Girls' Club remains valid despite the ownership transition of the Club Building.

Another reason that leads this Court to conclude that Plaintiff fails to adequately allege that a taking occurred is that the allegations in the complaint indicate that Defendant took no affirmative actions in taking ownership of the Club Building. Though Plaintiff alleges that following the acquisition, "the San Diego Sheriff's Department completed a lock out of the property," the transition of ownership to

1  Defendant is the result of a lease agreement entered into between Defendant and the
2  Girls' Club in 1958. (Compl. ¶¶ 12–13.) When a certain provision of the lease
3  agreement came to pass, the ownership of the Club Building automatically transitioned
4  to Defendant. During the time leading up to Plaintiff obtaining the judgment lien and
5  the time after, Plaintiff does not allege that Defendant engaged in any affirmative
6  conduct taking her judgment lien. Similarly, there are also no allegations that clearly
7  indicate that the judgment lien itself was taken for public use. See U.S. Const. amend.
8  V.

9       A judgment lien is defined as a "lien imposed on a judgment debtor's nonexempt
10 property" that also "gives the judgment creditor the right to attach the judgment
11 debtor's property." Black's Law Dictionary (9th ed. 2009) (under definition for "lien").
12 Defendant provides legal authority that states that "[g]enerally a judgment lien can
13 attach only to property actually owned by the judgment debtor, and he must have a
14 vested interest in the [property]." Mercantile Collection Bureau v. Roach, 195 Cal.
15 App. 2d 355, 357 (1961). That proposition is important to this case. Plaintiff obtained
16 a judgment against the Girls' Club related to a loan and other employment-related
17 damages. In an effort to collect against the Girls' Club—the judgment debtor—Plaintiff
18 chose to attach its property, at the time, being the Club Building. But as Plaintiff
19 recognizes, the Club Building's owner is no longer the Girls' Club. Thus, the
20 attachment is not properly applied against the judgment debtor.

21      Additionally, Defendant points out that the judgment lien never attached to the
22 Club Building to begin with because though the lease terminated in November 2009,
23 Plaintiff did not record her judgment until March 15, 2010. (Def.'s Mot. 6:1–8.)
24 California Civil Procedure Code § 697.410(a) provides that a judgment lien on real
25 property attaches to all interests in real property in the county where the lien is created
26 against the judgment debtor at the time the lien was created. Reviewing the allegations
27 in the complaint and the relevant attached documents, it appears that there is a serious
28

question as to the validity of the judgment lien's attachment to the Club Building from this standpoint as well.

Plaintiff fails to provide an adequate response to the issues discussed above in her opposition brief.  And on a related matter, it is perplexing that Plaintiff now seeks satisfaction of her judgment against the Girls' Club for the Girls' Club's wrongful conduct from Defendant.  In essence, Plaintiff appears to be seeking compensation of a private action from public funds.  However, as discussed above, she fails to adequately plead facts demonstrating that Defendant engaged in any recognized form of a taking under the Takings Clause.  Moreover, there is serious doubt regarding whether the attachment of the judgment lien to the Club Building is even valid.  Therefore, the Court concludes that Plaintiff fails to adequately state a claim for violation of the Takings Clause of the U.S. Constitution.  See Fed. R. Civ. P. 12(b)(6).

## IV. CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS WITH LEAVE TO AMEND** Defendant's motion to dismiss.  (Doc. 3.)  If Plaintiff chooses to amend her complaint, she must do so no later than **May 27, 2014**.

**IT IS SO ORDERED.**

**DATE: May 5, 2014**

_____
**HON. THOMAS J. WHELAN**
United States District Court
Southern District of California